IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:11-CV-33-D

| | | |
|---|---|---|
| LONESOURCE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| UNITED STATIONERS SUPPLY CO., | ) | |
| | ) | |
| Defendant. | ) | |

On December 20, 2010, Lonesource, Inc. ("Lonesource") sued United Stationers Supply Co. ("United") in Wake County Superior Court. Compl. [D.E. 1-2]. On January 20, 2011, United removed the case to this court pursuant to diversity jurisdiction [D.E. 1]. On March 14, 2012, United filed two motions for partial summary judgment on Lonesource's claims for declaratory judgment, breach of contract, anticipatory breach of contract, fraud, and unfair and deceptive trade practices, and filed supporting memoranda [D.E. 45-46, 49-50]. On April 2, 2012, United filed a motion for partial summary judgment on its counterclaims for breach of contract and unjust enrichment, and filed a supporting memorandum [D.E. 62-63]. On April 27, 2012, Lonesource filed a motion to strike and a supporting memorandum [D.E. 81-82].

As discussed below, United's motions for summary judgment on Lonesource's claims for declaratory judgment, breach of contract, anticipatory breach of contract, fraud, and unfair and deceptive trade practices are granted. United's motion for partial summary judgment on its counterclaims for breach of contract and unjust enrichment is denied. Lonesource's motion to strike

is denied.[1]

I.

Lonesource is a national supplier and reseller of office supplies, information technology, data supplies, paper, office furniture, and print and promotional products. United is a national wholesaler of office products. In June 2008, Lonesource acquired Sunbelt Office Products, LLC ("Sunbelt"). [D.E. 75-6], Sullivan Dep. 9. Before this acquisition, Sunbelt purchased most of its office products from United, while Lonesource purchased most of its office products from another wholesaler, S.P. Richards Company. [D.E. 75-5], 2d B. King Decl. ¶¶ 3–4.

In August 2008, Lonesource and United reached an agreement on a supply contract. [D.E. 29]. Under this contract, effective September 1, 2008, Lonesource agreed to use United as its "primary supplier" of products for 60 months, and United agreed to pay $3.32 million in conversion funds to Lonesource. Id.; [D.E. 46-6], Sossaman Dep. 66. Converting from one wholesaler to another is expensive and time-consuming. See Compl. ¶ 21; [D.E. 75-5], 2d B. King Decl. ¶ 4. Providing conversion funds is an industry practice to help induce a purchaser to change wholesalers.

Exhibit A to the contract included the agreement about United's payment of conversion funds to Lonesource and Lonesource's agreement to use United as its "primary supplier." Exhibit A stated:

> On September 1, 2008, United will pay Lonesource $3,320,000 in conversion funds
> for extending United a 60 month agreement naming United as its primary supplier.

---

[1] Lonesource moved for summary judgment on United's counterclaims for fraudulent inducement, intentional misrepresentation, and negligent misrepresentation, as well as United's affirmative defenses of misrepresentation and fraudulent inducement [D.E. 57]. United also moved for summary judgment on Lonesource's claim for tortious interference with prospective economic advantage [D.E. 53]. However, the parties later stipulated to dismissing these counterclaims and defenses of United, and Lonesource's tortious interference claim [D.E. 67, 80]. Thus, these counterclaims and defenses of United, and Lonesource's tortious interference claim are dismissed without prejudice. See Fed. R. Civ. P. 41(a)(2), (c). The pending motions for summary judgment [D.E. 53, 57] are dismissed as moot.

> 'Primary supplier' means that (i) Lonesource will purchase at least 70% of its total monthly office products purchases from United, and (ii) Lonesource will purchase at least 95% of its total monthly wholesale office products purchases from United.
>
> 'Total office products monthly purchases' means Lonesource's aggregate monthly purchases of office products merchandise for resale from all sources (including purchases from manufacturers and purchases from wholesalers). 'Total monthly office products wholesale purchases' means Lonesource's aggregate monthly purchases of office products merchandise for resale from all sources other than manufactures [sic] (such as purchases from wholesalers).
>
> If Lonesource ceases to use United as its primary supplier for any reason (including an inability of United and Lonesource to agree on an issue covered by this agreement or any dispute arising from or related to this agreement), then:
>
> Within thirty days Lonesource will reimburse United an amount equal to one-sixtieth (1/60) of the conversion funds amount noted above, multiplied by the number of months remaining in the agreement;
> and
> Lonesource's and United's obligations under this agreement will terminate.

[D.E. 29] 4.

Lonesource contends that it was impossible to comply with the primary-supplier requirement in September and October 2008 due to the conversion process from its previous supplier, and that United knew of this problem and did not object. See [D.E. 46-11], Dep. Ex. 96, Interrog. 7, 15. Moreover, soon after the contract went into effect, United was dissatisfied with the deal. See [D.E. 75-2], Miller Dep. 69; [D.E. 76-1], Dep. Ex. 12. In particular, United was very unhappy with the volume, pricing, and shipping terms of Lonesource's paper orders. See, e.g., [D.E.46-24], Dep. Ex. 34; [D.E. 46-11], Dep. Ex. 96, Ex. C; [D.E. 76-3], Dep. Ex. 166; [D.E. 76-4] Dep. Ex. 167. United was losing money on paper sales. [D.E. 46-9], Miller Decl. ¶ 10. United and Lonesource thereafter negotiated several modifications to the contract, and agreed to implement a number of these modifications. See [D.E. 46-9], Miller Decl. ¶¶ 11–13; [D.E. 46-5], Phipps Decl. ¶ 14; [D.E. 46-4],

B. King Dep. 108–09, 120–22; [D.E. 46-10], Sullivan Dep. 30–35, 58–63; [D.E. 46-24], Dep. Ex. 34.

During the contract period, Lonesource purchased some paper from other suppliers, and United was aware that Lonesource was doing so. See, e.g., [D.E. 46-9], Miller Decl. ¶ 21; [D.E. 75-24], Sullivan Decl. ¶¶ 15–20. Despite these outside purchases, Lonesource asserts that it did not violate the contract's primary-supplier requirement in and after November 2008. See [D.E. 46-11], Dep. Ex. 96, Interrog. 7, 15. Lonesource also contends that United waived its contractual rights as to the primary-supplier requirement from November 2008 to December 2010.

On September 1, 2010, Jeffrey Howard, a senior vice president at United, wrote to Bradley King, Lonesource's president and CEO, to request an audit of Lonesource's compliance with the primary-supplier requirement. [D.E. 46-16], Dep. Ex. 92. United's letter stated that if at any point Lonesource had failed to comply with the primary-supplier requirement, the obligations under the contract would have automatically terminated. Id. However, in that event, the letter also described United's willingness to "work with Lonesource to either negotiate a new supply contract or transition Lonesource to a new supplier." Id. In December 2010, Lonesource ceased ordering supplies from United, obtained another supplier, and filed suit.

II.

United seeks summary judgment on Lonesource's claims for declaratory judgment, breach of contract, anticipatory breach of contract, fraud, and unfair and deceptive trade practices, as well as United's counterclaims for breach of contract and unjust enrichment.[2] In considering these

---

[2] In order to avoid the thirty page limit on the length of a memorandum in Local Civil Rule 7.2(e), United filed three motions for partial summary judgment on March 14, 2012 [D.E. 45, 49, 53]. The memorandum in support of each motion was 25, 21, and 30 pages in length, respectively [D.E. 46, 50, 54]. United should have filed a single motion for summary judgment and a motion to

4

motions for partial summary judgment, the court views the evidence in the light most favorable to Lonesource and applies well-established principles under Federal Rule of Civil Procedure 56. See, e.g., Fed. R. Civ. P. 56; Scott v. Harris, 550 U.S. 372, 378 (2007); Celotex Corp. v. Catrett, 477 U.S. 317, 325–26 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–52 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585–87 (1986). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson, 477 U.S. at 247–48.

The party seeking summary judgment must initially come forward and demonstrate an absence of a genuine issue of material fact. See Celotex, 477 U.S. at 325. Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact for trial. See Matsushita, 475 U.S. at 586–87. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. It is insufficient to show a "mere . . . scintilla of evidence in support of the [nonmoving party's] position . . . ; there must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]." Id. at 252.

Because the court is exercising diversity jurisdiction, it applies state substantive law. The parties agree that the substantive law of North Carolina applies.

---

exceed the page limit on its memorandum. It did not. Instead, United engaged in gamesmanship to avoid Local Civil Rule 7.2(e). The court does not appreciate the gamesmanship reflected in United's filings. United's counsel is admonished. If the court sees this type of gamesmanship from United's counsel or any other lawyer, the briefs and motions will be stricken and counsel will be sanctioned.

At its core, this case involves an alleged breach of contract. Accordingly, the court first addresses United's motion for summary judgment on Lonesource's claims for breach of contract and anticipatory breach of contract.

Lonesource concedes that it left United to use S.P. Richards Company as its new supplier in December 2010. See [D.E. 46-4], B. King. Dep. 176, 183. Lonesource also concedes that United continued to perform according to the terms of the contract (as modified) until December 20, 2010. See id. 121–22, 176–77. Lonesource argues, however, that it was entitled to change suppliers in December 2010 because United had repudiated its contract with Lonesource. In support, Lonesource cites United's requests to modify the contract and United's alleged threats to cut off Lonesource's supply, which Lonesource construes as indicating that United would not continue to perform. See, e.g., Pl.'s Mem. Opp'n [D.E. 69] 29–30; [D.E. 75-5], 2d B. King Decl. ¶¶ 17–18; [D.E. 75-3], B. King Dep. 66–67; [D.E. 77-24], Dep. Ex. 186; [D.E. 77-25], Dep. Ex. 243. As further evidence of United's alleged anticipatory breach, Lonesource also cites the September 1, 2010 letter from Jeffrey Howard to Bradley King. [D.E. 46-16], Dep. Ex. 92. The letter expresses United's belief that Lonesource had breached the primary-supplier requirement in the contract and asks to audit Lonesource's compliance with the primary-supplier requirement. Id. The letter also states:

> Assuming the audit confirms the 2008 Agreement has terminated, we understand it will take time for Lonesource and United to negotiate a new agreement or, failing that, for Lonesource to transition to alternate suppliers. Accordingly . . . assuming Lonesource repays the conversion funds and otherwise maintains its account current . . . United will work with Lonesource to either negotiate a new supply contract or transition Lonesource to a new supplier.

Id. Lonesource contends that this letter shows that United did not intend to honor the contract and supports its anticipatory repudiation claim. Cf. [D.E. 77-23], Dep. Ex. 130. United responds that

6

instead of permitting the audit to take place in 2010, Lonesource abandoned the contract during the contract's 60-month term, obtained another supplier, and filed suit in December 2010.

Anticipatory breach of contract is a breach committed before there is a present duty of performance, and results from words or conduct showing a clear intent to refuse performance in the future. See Cook v. Lawson, 3 N.C. App. 104, 107, 164 S.E.2d 29, 32 (1968). To succeed on a claim for anticipatory breach of contract, the words or conduct renouncing performance must be "a positive, distinct, unequivocal, and absolute refusal to perform the contract." Gupton v. Son-Lan Dev. Co., 205 N.C. App. 133, 140, 695 S.E.2d 763, 768 (2010) (quotation omitted).

Even viewing the evidence in the light most favorable to Lonesource, United's communications in 2009 and 2010 were not sufficiently distinct, unequivocal, and absolute to constitute anticipatory repudiation in December 2010 or before. See, e.g., D.G. II, LLC v. Nix, 712 S.E.2d 335, 340–41 (N.C. Ct. App. 2011). Informing the other party to a contract that there is or may be a breach of contract is not anticipatory breach. See Henlajon, Inc. v. Branch Highways, Inc., 149 N.C. App. 329, 336, 560 S.E.2d 598, 603 (2002). Likewise, requesting further information about the contract, suggesting possible renegotiation, or making statements that merely cast doubt about future performance are not anticipatory breach. See 23 Williston on Contracts § 63:47 (4th ed. 1990); see also Millis Constr. Co. v. Fairfield Sapphire Valley, Inc., 86 N.C. App. 506, 510–11, 358 S.E.2d 566, 569 (1987). No rational jury could find that United distinctly, unequivocally, and absolutely renounced performance in or before December 2010. See, e.g., Edwards v. Proctor, 173 N.C. 41, 91 S.E. 584, 585–86 (1917); D.G. II, 712 S.E.2d at 340–41; Henlajon, 149 N.C. App. at 336, 560 S.E.2d at 603. Thus, United did not commit anticipatory breach in or before December 2010, and Lonesource's anticipatory repudiation claim fails as a matter of law.

7

In its complaint, Lonesource also alleged that United unilaterally changed the pricing of paper and freight charges and thereby materially breached the contract before the expiration of its 60-month term. See Compl. ¶¶ 64, 66. Lonesource now concedes, however, that it agreed to the changes to paper pricing and freight charges. See, e.g., [D.E. 46-10], Sullivan Dep. 60–62. Nonetheless, Lonesource argues that United forced Lonesource to accept the changes and thereby terminated the contract. See Pl.'s Mem. Opp'n [D.E. 69] 29.

The record does not support the notion that United forced Lonesource to agree to mutual modifications to the contract. Moreover, to the extent Lonesource is asserting duress, the defense fails. A party asserting duress must show a wrong or unlawful act that induces the claimant to act under circumstances depriving the claimant of the exercise of free will. See Link v. Link, 278 N.C. 181, 194, 179 S.E.2d 697, 704–05 (1971); Smithwick v. Whitley, 152 N.C. 369, 67 S.E. 913, 914 (1910); Radford v. Keith, 160 N.C. App. 41, 43–44, 584 S.E.2d 815, 817–18 (2003). Lonesource contends that United threatened to stop supplying Lonesource. See [D.E. 75-5], 2d B. King Decl. ¶¶ 17–18; [D.E. 77-24], Dep. Ex. 186. A threatened breach, however, does not constitute duress unless the breach will result in irreparable injury, the threat is effective because of economic power not derived from the contract itself, the threatened party could not replace the threatening party, and there is no immediate legal remedy. See G.E.B., Inc. v. QVC, Inc., 129 F. Supp. 2d 856, 861 (M.D.N.C. 2000). Lonesource also argues that a breach would have resulted in irreparable injury. See [D.E. 75-5], 2d B. King Decl. ¶ 21; [D.E. 97-5], Sullivan Dep. 13. However, no rational jury could find that United had economic power outside the contract. Furthermore, Lonesource's conduct in December 2010 demonstrates the availability of a replacement supplier and a legal remedy. After all, in December 2010, Lonesource switched to S.P. Richards Company as its supplier and filed suit.

8

Accordingly, the contract modifications did not terminate the contract, and Lonesource's assertion of duress fails.

Next, the court addresses United's motion for summary judgment on its counterclaims for breach of contract and unjust enrichment and Lonesource's claim for declaratory judgment. Lonesource stopped using United as its supplier in December 2010. Before December 2010, United performed according to the terms of the contract. See, e.g., [D.E. 46-4], B. King. Dep. 121–22. Lonesource's failure in December 2010 to adhere to the contract constitutes a breach of the contract. See Sechrest v. Forest Furniture Co., 264 N.C. 216, 217, 141 S.E.2d 292, 293–94 (1965); Cater v. Barker, 172 N.C. App. 441, 447, 617 S.E.2d 113, 117–18 (2005). Thus, to the extent that United contends that Lonesource breached the contract in December 2010 on the date that Lonesource abandoned the contract, United's motion for summary judgment as to Lonesource's breach of contract claim and Lonesource's declaratory judgment claim is granted.

Next, the court addresses whether Lonesource breached the contract before December 2010. United contends that Lonesource breached the contract's primary-supplier requirement every month from September 2008 to December 2010, except March 2010. See Def.'s Mem. [D.E. 46] 13, 19–20. Lonesource denies that it breached the primary-supplier requirement except in September and October 2008 (as a result of the lag in transferring its ordering system to United). See Pl.'s Mem. Opp'n [D.E. 69] 16–22. As for September and October 2008, Lonesource contends that United waived the breach. As for November 2008 to December 2010, Lonesource contends that it did not breach the contract's primary-supplier requirement, but if it did, United also waived that breach.

Before addressing Lonesource's waiver argument, the court addresses Lonesource's argument that it was not in breach between November 2008 and December 2010. Whether Lonesource was

9

Case 5:11-cv-00033-D   Document 120   Filed 03/28/13   Page 9 of 17

in breach between November 2008 and December 2010 turns primarily on the characterization of some of Lonesource's suppliers. The contract allowed Lonesource to purchase some goods from other suppliers. However, Exhibit A of the contract conditioned Lonesource's receipt of the conversion funds on Lonesource's adherence to the primary-supplier requirement. Specifically, Lonesource agreed that 70% of its total monthly office products purchases "from all sources (including purchases from manufacturers and purchases from wholesalers)" would be from United, and that 95% of its total monthly wholesale office products purchases "from all sources other than manufactures [sic] (such as purchases from wholesalers)" would be from United. [D.E. 29], Ex. A. Lonesource contends that it adhered to the contract's primary-supplier requirement. United responds that Lonesource improperly classified purchases from Costco Wholesale Corporation ("Costco"), Athens Paper Company ("Athens"), and TriMega Purchasing Association ("TriMega") as purchases from manufacturers. Moreover, United argues that when these purchases are correctly categorized as purchases "from sources other than manufacturers," they exceed 5% of Lonesource's total monthly office products purchases, thereby rendering Lonesource in breach of the primary-supplier requirement from November 2008 to December 2010, except for March 2010.

In considering a motion for summary judgment, the court must examine both the materiality and the genuineness of alleged fact issues. See Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 300 (4th Cir. 2010). A dispute about a material fact is genuine if "a reasonable [fact-finder] could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. Summary judgment is appropriate when the evidence would lead a reasonable person to only one conclusion. Id. at 250; see Celotex, 477 U.S. at 322–23; Matsushita, 475 U.S. at 587.

When the plain language of a contract is clear, the intention of the parties is inferred from the contract's words. See Walton v. City of Raleigh, 342 N.C. 879, 881, 467 S.E.2d 410, 411

(1996). "The terms of an unambiguous contract are to be taken and understood in their plain, ordinary and popular sense." Weyerhaeuser Co. v. Carolina Power & Light Co., 257 N.C. 717, 719–20, 127 S.E.2d 539, 541 (1962). Thus, the court gives the term "manufacturer" its ordinary meaning. See Black's Law Dictionary 984 (8th ed. 2004) (defining manufacturer as "[a] person or entity engaged in producing or assembling new products").

Lonesource's CFO David Ryan testified that Costco, Athens, and TriMega do not make the products they sell and are not manufacturers. See [D.E. 46-19], Ryan Dep. 27–28; accord [D.E. 46-9], Miller Decl. ¶¶ 14–16, 23. Accordingly, they are "sources other than manufacturers" under the contract. Furthermore, Lonesource's financial data shows that Lonesource's combined purchases from these entities exceeded 5% every month, except in March 2010. See [D.E. 46-11], Dep. Ex. 96, Ex. A. Therefore, Lonesource failed to obtain 95% of its purchases "from all sources other than manufacturers (such as purchases from wholesalers)" from United every month, except in March 2010. Accordingly, Lonesource breached the primary-supplier requirement every month from November 2008 to December 2010, except in March 2010.

In opposition to this conclusion, Lonesource contends that purchases from TriMega and Athens are properly categorized as purchases from manufacturers. Pl.'s Mem. Opp'n [D.E. 69] 22–23. Specifically, Lonesource argues that the purchases were actually "from" the manufacturer, although they occurred "through" TriMega and Athens. See [D.E. 75-5], 2d B. King Decl. ¶¶ 23–28. In support, Lonesource cites a declaration from Bradley King, who is Lonesource's president and CEO. Id. ¶¶ 2, 23–28. Bradley King submitted the declaration in opposition to United's motion for summary judgment.

Bradley King's declaration contradicts the deposition testimony of two other senior Lonesource executives. See [D.E. 97-7], S. King. Dep. 113; [D.E. 97-6], Ryan Dep. 28–29; see also

11

[D.E. 97-5], Sullivan Dep. 14–15. "[I]t is well established that a genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of a party's testimony is correct." Erwin v. United States, 591 F.3d 313, 325 n.7 (4th Cir. 2010) (quotations and alterations omitted). Thus, the purchases from TriMega, Athens, and Costco were not purchases from manufacturers under the contract. Rather, Lonesource was in breach of the primary-supplier requirement every month from November 2008 through December 2010, except in March 2010.

Next, Lonesource argues that United waived any breach of the primary-supplier requirement from September 2008 until December 2010.[3] "Where there is a breach of a contract or some provision thereof which does not go to the substance of the whole contract and indicate an intention to repudiate it, the breach may be waived by the innocent party." Towery v. Carolina Dairy, Inc., 237 N.C. 544, 546, 75 S.E.2d 534, 536 (1953); see Wheeler v. Wheeler, 299 N.C. 633, 637–40, 263 S.E.2d 763, 765–67 (1980). The waiver must be a voluntary and intentional relinquishment of a known right. See Nye v. Lipton, 50 N.C. App. 224, 230, 273 S.E.2d 313, 317 (1980).

Here, Lonesource did not tell United that it was in breach of the primary-supplier requirement or ask for a waiver. See [D.E. 46-4], B. King Dep. 215–16. However, for purposes of effecting a waiver, the non-breaching party's knowledge of the breach may be actual or constructive. See Danville Lumber & Mfg. Co. v. Gallivan Bldg. Co., 177 N.C. 103, 97 S.E. 718, 720 (1919) (per curiam). The intent to waive generally is a question of fact. See, e.g., Harris & Harris Constr. Co. v. Crain & Denbo, Inc., 256 N.C. 110, 119, 123 S.E.2d 590, 596 (1962). Although United argues

---

[3] Lonesource also contends that equitable estoppel bars United from asserting that Lonesource breached the contract. See Pl.'s Mem. Opp'n [D.E. 69] 20–22. The argument fails. See, e.g., Gore v. Myrtle/Mueller, 362 N.C. 27, 33–34, 653 S.E.2d 400, 405 (2007); Lenoir Mem'l Hosp. v. Stancil, 263 N.C. 630, 633, 139 S.E.2d 901, 903 (1965).

12

that it never granted Lonesource a waiver, a waiver may be express or implied. See, e.g., Phoenix Ltd. P'ship of Raleigh v. Simpson, 201 N.C. App. 493, 500, 688 S.E.2d 717, 722 (2009).

Waiver is an affirmative defense to a breach of contract claim. See Taha v. Thompson, 120 N.C. App. 697, 702, 463 S.E.2d 553, 556 (1995). Because Lonesource would bear the burden of proving this affirmative defense at trial, it must make a showing sufficient to establish this defense to defeat United's motion for summary judgment. See, e.g., Anderson, 477 U.S. at 248; Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc., 673 F.3d 294, 299–300 (4th Cir. 2012). There are two distinct time periods for which Lonesource asserts waiver. The first period is September and October 2008. In this period, Lonesource argues that United knew that Lonesource had not fully transferred its ordering system to United, and United waived the primary-supplier requirement for these two months. See Pl.'s Mem. Opp'n [D.E. 69] 16–20. The second period is the remainder of the contract, November 2008 through December 2010. In this second period, Lonesource argues that United waived any breach of the primary-supplier requirement arising from Lonesource's purchases of paper from other suppliers. See id. 23–26.

Lonesource violated the primary-supplier requirement in September and October 2008. See [D.E. 46-11], Dep. Ex. 96, Interrog. 7, 15. Although the contract's effective date was September 1, 2008, at that point Lonesource was still converting its ordering system to be compatible with United. See [D.E. 46-8], Dep. Ex. 257. United admits that it was aware of this fact. See id.; see also [D.E. 75-25], Dep. Ex. 30. United argues, however, that it did not waive Lonesource's breach of the primary-supplier requirement in September and October 2008 because it did not know the amounts of Lonesource's outside purchases and Lonesource did not request a waiver. See Def.'s Mem. [D.E. 46] 6–7. However, the knowledge necessary to effect a waiver may be actual or constructive. See Danville Lumber, 97 S.E. at 719. United knew that there were 6000 SKUs that had to be manually

13

converted to United as of September 1, 2008, and knew that this change could not take place immediately. See, e.g., [D.E. 46-8], Dep. Ex. 257. Moreover, on March 3, 2009, United executives exchanged emails discussing Lonesource's statement that orders from 2008 were not representative of business going forward because they were still transitioning in 2008 from purchasing from their previous supplier. See [D.E. 75-25], Dep. Ex. 30. Despite having this information, United did not declare a breach or even take action to investigate the details of Lonesource's orders in September and October 2008.

The intent to waive a contractual right may be implied from conduct that naturally leads the other party to believe that the right has been intentionally abandoned. See, e.g., Klein v. Avemco Ins. Co., 289 N.C. 63, 68, 220 S.E.2d 595, 598–99 (1975). Here, viewing the evidence in the light most favorable to Lonesource, a genuine issue of material fact exists as to whether United implicitly waived Lonesource's breach in September and October 2008.

Turning to the second period (November 2008 to December 2010), the record establishes that Lonesource was in breach of the primary-supplier requirement every month of the contract between November 2008 and December 2010, except March 2010. See, e.g., [D.E. 46-11], Dep. Ex. 96, Ex. A; [D.E. 46-17], Ex. B. Again, Lonesource contends that United implicitly waived any breach.

From November 2008 through December 2010, Lonesource never told United the volume of its paper or other orders from other suppliers, informed United that it was in breach, or asked for a waiver. See [D.E. 46-9], Miller Decl. ¶¶ 21–22; [D.E. 46-10], Sullivan Dep. 243. Nonetheless, viewed in the light most favorable to Lonesource, the evidence suggests that United knew that Lonesource was ordering paper elsewhere and that United acquiesced due to the losses that it suffered when Lonesource purchased paper from United. See, e.g., [D.E. 75-5], 2d B. King Decl. ¶¶ 9–20; [D.E. 75-24], Sullivan Decl. ¶¶ 15–19; [D.E. 75-6], Sullivan Dep. 65–66; [D.E. 77-13],

14

Dep. Ex. 39; [D.E. 76-14], Dep. Ex. 77; [D.E. 77-5], Dep. Ex. 152; [D.E. 77-8], Dep. Ex. 154; [D.E. 77-4], Dep. Ex. 191; [D.E. 77-7], Dep. Ex. 216; [D.E. 77-9], Dep. Ex. 260. Tellingly, United's unprofitable paper sales to Lonesource were a matter of constant conflict between the parties throughout the contract, bolstering Lonesource's contention that it reasonably believed that United waived the primary-supplier requirement from November 2008 through December 2010. See, e.g., [D.E. 75-3], B. King Dep. 150–52; [D.E. 76-9], Moore Dep. 58–59; [D.E. 76-18], Dep. Ex. 32; [D.E. 46-32], Dep. Ex. 33; [D.E. 46-33], Dep. Ex. 35; [D.E. 77-13], Dep. Ex. 39; [D.E. 76-14], Dep. Ex. 77; [D.E. 76-15], Dep. Ex. 78; [D.E. 76-23], Dep. Ex. 89; [D.E. 46-11], Dep. Ex. 96, Ex. C; [D.E. 76-4], Dep. Ex. 167. Viewing the evidence in the light most favorable to Lonesource, a genuine issue of material fact exists as to whether United implicitly waived Lonesource's breach of the primary-supplier requirement between November 2008 and December 2010. See, e.g., Klein, 289 N.C. at 68, 220 S.E.2d at 598–99; Danville Lumber, 97 S.E. at 719; cf. Ray Commc'ns, 673 F.3d at 299–300; Gray v. Spillman, 925 F.2d 90, 95 (4th Cir. 1991). Thus, United's motion for summary judgment on its breach of contract claim is denied. Furthermore, because United's recovery under the underlying contract is still in dispute, the court declines to grant summary judgment to United on its counterclaim for unjust enrichment.

Finally, United seeks summary judgment on Lonesource's fraud claim and Lonesource's Unfair and Deceptive Trade Practices Act ("UDTPA") claim. To succeed on a fraud claim, a claimant must demonstrate: "(1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage[s]." Myers & Chapman, Inc. v. Thomas G. Evans, Inc., 323 N.C. 559, 568–69, 374 S.E.2d 385, 391 (1988) (emphasis omitted). Lonesource has failed to present evidence that creates a genuine issue of material fact on fraud. Accordingly, the court grants summary judgment

15

to United on Lonesource's fraud claim. See Johnson v. Beverly-Hanks & Assocs., Inc., 328 N.C. 202, 207–08, 400 S.E.2d 38, 41–42 (1991); Sunset Beach Dev., LLC v. AMEC, Inc., 196 N.C. App. 202, 209, 675 S.E.2d 46, 52 (2009); Hospira Inc. v. Alphagary Corp., 194 N.C. App. 695, 699, 671 S.E.2d 7, 11 (2009). Moreover, because Lonesource's UDTPA claim derives from its fraud claim, Lonesource's UDTPA claim fails as well. See Johnson, 328 N.C. at 208–09, 400 S.E.2d at 42; Pleasant Valley Promenade v. Lechmere, Inc., 120 N.C. App. 650, 657–58, 464 S.E.2d 47, 54 (1995); see also Ellis v. La.-Pac. Corp., 699 F.3d 778, 787 (4th Cir. 2012); Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 347 (4th Cir. 1998); Bartolomeo v. S.B. Thomas, Inc., 889 F.2d 530, 535–36 (4th Cir. 1989). Hence, the court grants summary judgment to United on Lonesource's UDTPA claim.

### III.

Lonesource has moved to strike the declaration of United's expert, Dr. Andrew Brod [D.E. 81]. See Fed. R. Civ. P. 37(c). Lonesource contends that Dr. Brod's declaration includes opinions that were not previously disclosed or timely provided in a supplement to Lonesource. See Fed. R. Civ. P. 26(a)(2)(E), (e).

Lonesource's motion does not specify the opinions in Dr. Brod's declaration that allegedly were not timely disclosed. The court has reviewed the record and the declaration and cannot identify any new opinions. Thus, Lonesource's motion to strike is denied.

### IV.

In sum, United's motion for summary judgment on Lonesource's claims for declaratory judgment, breach of contract, and anticipatory breach of contract [D.E. 45] is GRANTED. United's motion to seal [D.E. 59] is GRANTED, but United's motion for summary judgment on its counterclaims for breach of contract and unjust enrichment [D.E. 62] is DENIED. United's motion

16

for summary judgment on Lonesource's claims for fraud and unfair and deceptive trade practices [D.E. 49] is GRANTED. Lonesource's motion to strike [D.E. 81] is DENIED. Because the parties have stipulated to dismiss Lonesource's claim for tortious interference with prospective economic advantage and United's counterclaims for fraud in the inducement, intentional misrepresentation, and negligent representation and United's affirmative defenses of intentional or negligent misrepresentation and fraud in the inducement, the summary judgment motions associated with these claims and defenses are DISMISSED as moot [D.E. 53, 57]. The parties shall engage in mediation no later than May 24, 2013. If the case does not settle, the trial will begin in Raleigh on July 15, 2013.

SO ORDERED. This 28 day of March 2013.

JAMES C. DEVER III
Chief United States District Judge